BREWER *v.* MAYOR AND ALDERMEN OF HUNTINGDON.

(*Jackson.*    May 29th, 1888.)

CONSTITUTIONAL LAW.    *Passage of laws.    Entries on Journals.*

Where it appears affirmatively, by entries on the Journals, that an Act was rejected in either House before its final passage, it is void, although it may also appear, by proper Journal entries, that it was "signed by the respective Speakers in open session," and that fact "noted on the Journals," and that it was approved by the Governor.

Cited : Constitution, Art. I., § 18 ; Acts 1887, p. 232.

Case cited and distinguished : Hayes *v.* State (oral opinion).

---

FROM  CARROLL.

---

Appeal from Chancery Court of Carroll County. A. G. HAWKINS, Ch.

J. R. HAWKINS for Brewer.

W. W. MURRAY and G. T. McCALL for Mayor and Aldermen of Huntingdon.

SNODGRASS, J. The only question which arises for determination in this case is the constitutionality of the Act of 1887, repealing the act incorporating the town of Huntingdon with its amendments.

Brewer *v.* Mayor and Aldermen of Huntingdon.

The act in question, which is published with the others of that session, is found on page 232 of the Acts of 1887.

It appears to have been passed the 17th of March and approved the 24th, to take effect the 1st of May following.

The House and Senate Journals show the following steps taken in reference to the act. It was introduced in the House as "House Bill No. 408," and there passed its first reading January 22d, 1887; its second February the 12th, and its third on the 21st of February, 1887. (House Journal, pages 335, 397, and 531.)

Transmitted to the Senate, it passed there on its first and second readings February 22d and 23d. (Senate Journal, pages 394, 400.)

After passage on second reading, it was referred to the Committee on Corporations. (Page 400.)

March the 3d the committee reported the bill to the Senate, and recommended its passage on third reading. (Page 461.)

It was again referred to the same committee on same day. (Page 471.)

Subsequently, on the 17th of March, the committee again reported the bill to the Senate, and recommended its *rejection.* (Page 619.)

In the evening session of the same day, as appears in the Journal entry, which we copy in full, "On motion of Mr. Long, the Senate proceeded to the consideration of House bills on their third reading of a purely local nature.

"House Bill No. 408, To abolish the charter of the town of Huntingdon.

"The report of the Committee on Corporations, which recommends ·the *rejection* of the bill, was concurred in, and the bill was *rejected.*" (Page 628.)

On the 18th of March the Clerk of the Senate transmitted it to the House, and reported its rejection by the Senate. (House Journal, page 849.)

The same day the bill is reported to the House by the Committee on Enrolled Bills as "properly enrolled and ready to be signed." (Page 861.)

This report was made to the afternoon session, during which the Speaker announced that he had signed House Bill No. 408, with others, and this was noted on the Journal. (Page 864.)

The next day—March 19th—it was transmitted to the Senate for the signature of the Speaker of the Senate, by the Clerk of the House, and so reported. (Senate Journal, page 660.)

And on same day the Speaker of the Senate announced that he had signed the bill, and such entry was made upon the . Journal. (Page 660.)

The bill was thereafter (24th of March) returned to the House, with a message from the Governor announcing its approval. (House Journal, page 951.)

If all the entries in the Journals can be looked to, it appears affirmatively that this bill was rejected. But it is most earnestly argued that Section 18 of Article II. of the · Constitution, which

requires, among other things, that a bill, after being passed, shall be "signed by the respective Speakers in open session, the fact of such signing to be noted on the Journals," is the only mandatory provision for a Journal entry; and when such entries appear on the Journals of both Houses (as in this case), all inquiry is cut off, and any affirmative proceeding, irregularity, or omission is cured or supplied, and the bill must be conclusively held to have passed as required by the Constitution.

This view is plausible, and is supported by much persuasive authority in other States, but we do not assent to its correctness.

The Constitution of this State requires the keeping of a Journal by each House, in which its proceedings shall be written, and that it shall be published. (Art. II., Sec. 21.)

There is no provision which, in terms, gives one entry a force and validity superior to another, and we cannot undertake to do so by construction. Besides, we think there is another section of our Constitution which provides, by clear implication equivalent to positive direction, for keeping a record of the rejection of bills, as well as of their passage or purported passage.

The nineteenth section of Art. II. declares that "after a bill has been rejected, no bill containing the same substance shall be passed into a law during the same session."

It manifestly contemplates that the record shall

show the rejection of any bill offered, and if it does show it, that no other of the same substance can be constitutionally passed.

If it should then appear from the Journal of either House that a similar bill had been before rejected during the same session, and subsequently this one regularly passed, we would be compelled to look to the Journal to ascertain the rejection of the first, and, having done so, to declare the last void for this reason.

Now, it would be a strange construction to hold that we might look to the Journals to ascertain whether another had been so rejected as to make the one considered void, but could not look to the same Journals to ascertain whether the act involved had been itself rejected. If it was an answer that the entries showing that the bill was signed by the Speakers of both Houses in open session must be treated as conclusive that the former entry of rejection was erroneous, or had been vacated, it would be equally an answer to the same objection in respect to the apparent previous rejection of another similar bill; for it might be presumed that the entry of rejection had been rescinded, and the action so apparently made of record reconsidered. The same presumption that the Legislature would do its duty in respect to compliance with Sec. 19 arises that prevails with regard to any other section.

To indulge in such presumptions in the face of affirmative evidence on its own record to the con-

trary, would operate to amend the constitutional provision quoted, so as to make it read that "after a bill has been rejected, no bill containing the same substance shall be passed into a law during the same session. But if such bill is passed, it shall be presumed that no other of the same substance was rejected, and the one so passed shall be valid."

We held at Nashville in the Base-ball Case (*Hayes* y. *State*), that while the Journals would be considered in determining the validity of an act of the Legislature, every reasonable inference and presumption would be drawn and indulged in favor of the regularity of its passage, and where it did not affirmatively appear not to have passed, and such legitimate construction could be given to the record as sustained the law, it would be done. But in doing so, we went as far as sound reason and authority require.

We hold now that irregularities will be cured and omissions supplied by presumption, but where it affirmatively appears that a bill was rejected, the Journal entry so showing cannot be disregarded, and the act is void.

The decree is therefore reversed with cost.