State, *ex rel., v.* Algood.

STATE *ex rel. v.* ALGOOD.

(*Nashville.* December 31, 1888.)

$\begin{array}{ll} 87 & 163 \\ 110 & 613 \end{array}$

$\begin{array}{ll} 87 & 163 \\ 116 & 747 \end{array}$

1. CONSTITUTIONAL LAW. *Caption of amendatory statutes.*

The caption of an amendatory statute need not indicate the *particular character* of the proposed amendment, provided the title of the original act is therein set out, and the *purview* of the amendatory statute is germane to, and embraced within, the title thus recited.

Constitution construed: Art. II., § 17.

Case cited and approved: Hyman *v.* State, 87 Tenn., 109.

2. SAME. *Same. Case in judgment.*

An amendatory statute, transferring two counties from their respective judicial circuits to others, is constitutionally enacted under the caption, "An Act to amend an Act of the Extraordinary Session of 1885, passed June 11, and approved June 12, 1885, entitled 'An Act to divide the State of Tennessee into judicial circuits and chancery divisions, and provide for the administration of justice and equity in the Circuit, and Chancery, and other inferior Courts of this State, and to fix the time for holding said Chancery, Circuit, and other Courts.'"

Act construed: Acts 1887, Ch. 144.

(See 3 Lea, 340,)

3. SAME. *Passage of laws. Entries on Journals. Presumptions.*

Where an Act of the Legislature has been signed by the respective Speakers of both Houses in open session, and that fact noted on the Journals, and has been approved by the Governor, every reasonable presumption and inference will be made in favor of the regularity of its passage, and it will be upheld unless the Journals affirmatively show that it was defeated.

Constitution construed: Art. II., § 18.

Cases cited and approved: State *v.* McConnell, 3 Lea, 333; Hays *v.* State (oral opinion).

(See also 6 Lea, 549; 4 Lea, 611.)

Case cited and distinguished: Brewer *v.* Huntingdon, 86 Tenn., 732.

4. SAME.   *Same.   Same.   Case in judgment.*

Journals showed Bill passed by Senate and transmitted to House, where it was passed with an amendment.   Amended Bill was returned to Senate, where it was rejected.   Motions to reconsider were made, but Journal was silent as to any disposition of them.   Subsequently the amended Bill was signed by the Speakers in open session, and that fact noted on the Journals.   It was also approved by the Governor, and appeared in the printed Acts.

*Held:* The Act is valid.   The presumption obtains that the motion to reconsider prevailed.

5. SAME.   *Same.   Call of "ayes and noes."   Not required, when.*

The constitutional requirement that "the ayes and noes shall be taken in each House upon the final passage of every bill of a general character" has no application to an Act changing two counties from their respective judicial circuits to others, and fixing the time of holding courts therein and in one other county.   Such Act is of a *local*, not "of a *general character.*"

Constitution construed: Art. II., § 21.

Act construed: Acts 1887, Ch. 144.

---

FROM WHITE.

---

Appeal from Chancery Court of White County. T. W. WADE, Sp. Ch.

MURRAY & SPURLOCK and F. M. SMITH for Relator.

SNODGRASS & SMITH for Algood.

LURTON J.   The relator was elected District Attorney for the Sixth Judicial Circuit at the general

election of August, 1886. White County, which, at the date of his election, was one of the counties composing this circuit, has, by the act of March 19, 1887, been taken out of the Sixth and placed in the Fifth Circuit, of which Defendant Algood is the District Attorney. This bill is filed for the purpose of determining the validity of the act by which this change has been made. The defendant, Algood, demurred to the bill. The demurrer was overruled, and defendant, by permission of the Chancellor, has appealed from the decree overruling the demurrer.

The first objection made by the bill to the validity of the act changing White from the one circuit to the other is that the title of the act does not indicate the character of the amendment of the existing laws, and that it is therefore void, under Section 17 of Article II. of the State Constitution, which declares that "no bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

The title of the act in question is as follows: "An Act to amend an Act of the Extraordinary Session of 1885, passed June 11 and approved June 12, 1885, entitled 'An Act to divide the State of Tennessee into judicial circuits and chancery divisions, and provide for the administration of justice and equity in the circuit and chancery and other inferior courts of this State, and to fix the time for holding the terms of said chancery, circuit, and other courts.'"

The criticism is that this title does not indicate the character of the proposed amendment. This is not necessary if, in fact, the amendment is germane to the original act and is embraced within the title of the original or amended act. In such case, the title of the original act being made a part of the title of the amendatory act, the particulars of the amendment need not be shown by the title. In the case of *Hyman* v. *State*, decided at Knoxville, September Term, 1888, and reported, we, upon full consideration, held "that it is not important that the *title* of an amendatory act shall do more than recite the title or substance of an act amended, provided the amendment is germane to the subject of the original act and is embraced within the title of the original act."

The amendment is undoubtedly germane to the subject of the original act, as indicated by its title. There is nothing in this objection. The title of the amendatory act is sufficient.

It is next urged that this act was never, in fact, passed by the General Assembly in the manner prescribed by the Constitution. It appears from the Journal of the Senate that the bill, as originally introduced, was a Senate bill, and that it passed the Senate on three several readings, and was then transmitted to the House. The House Journal shows it to have passed its first and second readings as Senate Bill No. 262, and that it was then referred to a committee, who reported it back, and that "by unanimous consent Senate Bill

No. 262, To fix the time of holding the courts in the Fourth Chancery· Division, was taken up. The amendment offered by Mr. Hill was adopted, and the bill passed third reading without call of the roll." The amended bill was returned to the Senate, and the Senate Journal shows that the amendment was non-concurred in, on a call of the ayes and noes, by a vote of eleven ayes and eleven noes, and that on the same day a motion to reconsider this vote was entered. It further appears that on a subsequent day a . second motion to reconsider this adverse vote was entered. The Journal is silent as to the ultimate disposition of these motions to reconsider, but it does recite that upon a day subsequent to both of these motions the Speaker of the Senate, in open session, announced that he had signed this bill. Subsequently the act was approved by the Governor, and it is found among the published official Acts of the Legislature. The complainant insists that, from the Journal of the Senate as above recited, it is affirmatively shown that this Senate Bill No. 262 never did pass the Senate after it had been amended by the House, and that therefore the act is void.

In the case of· *Brewer* v. *Mayor of Huntingdon,* 2. Pickle, 737, we held that where it affirmatively appeared from the Journals of the Legislature that an act had not been passed in the manner required by the Constitution, that· the presumption arising from the fact that the Journal showed that the bill had been signed by the Speakers in open .

session would not overcome the affirmative proof from the Journal that, in fact, the bill had been defeated. The case under consideration differs from the case just cited in this: That the same Journal which records the defeat of the amended bill shows a motion to reconsider this adverse vote. Before the bill could be finally disposed of it became necessary to dispose of this motion to reconsider. The Journal does not, therefore, show affirmatively that this bill was defeated, because it is silent as to the ultimate disposition of the motion to reconsider. Shall we presume that this motion to reconsider was never called up, or that it failed upon being called up? or shall we, in favor of the validity of the law, presume that there was a reconsideration, and that the bill ultimately received the vote necessary to its passage? We see from the Journal that subsequently the Speaker of the Senate, in open session, announced that he had signed this bill; and this solemn official act is noted upon the Journal, as required by the Constitution. What presumption arises from this evidence of the passage of the bill? We think the rule well settled that where the Journal does not affirmatively show the defeat of the bill, every reasonable presumption and inference will be indulged in favor of the regularity of the passage of an act subsequently signed in open session by the Speaker. This is the rule as announced by this Court in the case of *State* v. *McConnell*, 3 Lea, 333, and as followed by us in the case of *Hays* v. *State*, decided at

Nashville in 1887, which case is referred to by Judge Snodgrass in announcing the opinion of the Court in the case of *Brewer* v. *Huntingdon*.

The Journal does not show affirmatively that this bill did not pass. The motion to reconsider, being duly entered, postponed the final fate of the bill. We know, as a matter of history and common political experience, that it is not unusual for a bill to be defeated and the adverse vote subsequently reconsidered, and the bill finally passed. The Constitution requires that after a bill has passed three readings in each House, "it shall be signed by the respective Speakers in open session, the fact of such signing to be noted on the Journals." The fact that, after an adverse vote, a motion to reconsider was entered, and that the Journal does not show any disposition of this motion, and that subsequently this bill was signed in open session by the Speaker of the Senate, as shown by the Journal, authorizes us to presume that the failure of the Journal to show the final passage of this bill is due to a clerical omission. This is, under the law applicable, the legitimate construction to be placed upon the whole record.

The next and last objection made to the validity of this act is that the Journal of the House shows affirmatively that this bill passed its third reading in the House without a call of the ayes and noes. This objection is rested upon Article II., Section 21, of the Constitution, which prescribes that "the ayes and noes shall be taken in each House upon

the final passage of every bill of a general character and bills making appropriations of public moneys; and the ayes and noes of the members on any question shall, at the request of any five of them, be entered on the Journal."

Is this such a bill as requires the ayes and noes to be taken? This depends upon whether it is a bill making an appropriation of public moneys· or a bill "*of a general character*" within the meaning of the Constitution. It is clearly not an appropriation bill. The very able counsel who have argued this cause for complainant insist that every law which is a public law is a bill of a general character. Any number of authorities have been cited to show that bills chartering banks and municipal corporations are public laws, and not private acts. This is conceded, but this is not the question. The Legislature is, by another provision of the Constitution, prohibited from passing any private or special acts. All laws must be general in the sense that they must apply to all alike. But if the framers of the Constitution used the phrase "laws of a general character" in contradistinction to private or special laws, then why was it necessary to add: "And laws making an appropriation of public moneys?" The greater would have included the less. Appropriation bills are not private or special laws. We think the phrase "laws of a general character" is used to distinguish general legislation—legislation in which the whole body of the people have, or may have, an interest—from

State, *ex rel.*, *v.* Algood.

legislation of a purely *local* character.  Laws may be public in their objects and either general or local in their application.  Thus, a law creating a new county, or changing a county line, or moving a county site, or creating a municipal corporation, would be public laws; and yet they would be local and not general in their application.  They would not be laws of a general character, but laws of local application.

The act in question changed two counties from one to another circuit, and fixed the terms for the courts of one or two others.  Such a law is not a "law of a general character," but a law limited and local in its application.  The constitutional provision relied upon was not applicable to such legislation.

It follows that the Act of 1887, changing White County from the Sixth to the Fifth Circuit, was constitutionally enacted, and that Defendant Algood is the lawful District Attorney for that county.

The decree of the Chancellor will be reversed, the demurrer sustained, and the bill dismissed at cost of the relator, Whitson.