STATE EX REL. CITY OF ALCOA *v.* MRS. W. Y. C. HANNUM.*

(*Knoxville.* September Term, 1928.)

Opinion filed December 8, 1928.

*Corpus Juris-Cyc References: Constitutional Law, 12CJ, section 222, p. 794, n. 23; Statutes, 36Cyc, p. 974, n. 23.

GAMBLE, CRAWFORD & GODDARD, for complainant, appellee.

CATE, SMITH, TATE & GODDARD, for defendant, appellant.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

Four suits were begun against Mrs. Hannum, the appellant herein, to collect municipal taxes for the years

1922-1925, inclusive, all of which were consolidated by the Chancellor for the purpose of trial.

The Chancellor rendered a decree for the City for the taxes claimed for the years 1922, 1924 and 1925, but denied the City's claim for the 1923 taxes, on the ground that the assessment for that year did not contain a sufficient description of the property assessed. Both parties have appealed to this court.

The assessment involved is of a certain tract of farm land, included within the corporate limits of the City of Alcoa, by its Charter Act of 1919, but excluded therefrom by an amendment to the charter in 1921. Private Acts 1921, chapter 697.

(1) It is conceded that if the charter amendment of 1921 was constitutionally enacted by the General Assembly, the consolidated causes must fail; but it is contended for the City that the Legislative Journals for the 1921 session of the General Assembly affirmatively show that the amendment was not enacted as a law.

The enrolled copy of the 1921 amendment, on file in the office of the Secretary of State, contains the signature of the respective speakers of the Senate and the House of Representatives, authenticating the act as having been passed on April 5, 1921; and the signature of the Governor, attesting his approval, appears thereon.

The Legislative Journals recite that the speaker of the House of Representatives, in which the bill originated, announced in open session that he had affixed his signature thereto; that it was thereupon transmitted to the Senate, and that the speaker of the Senate announced that he had signed the bill in open session. The Journal of the House of Representatives for April 7, 1921, recites that the bill was returned to the House by the Governor, with his approval.

The passage of the bill in the House of Representatives on three readings is duly noted on the Journal, and the Senate Journal recites its passage on first and second readings.

The defect in the legislative history of the bill, which the City of Alcoa insists is fatal to its validity, is that the Senate Journal for April 5, 1921, recites that the bill was tabled, and contains no further reference to the bill until on April 6th the Journal recites that the bill was transmitted to the Senate from the House for the signature of the speaker, and was on that date signed in open session by the speaker of the Senate. It is also pointed out for the City that the House Journal for April 5th contains a message, signed by the clerk of the Senate: "I am directed to return to the House, House Bill No. 1262, to amend chapter 510, Private Acts 1919, tabled by the Senate."

The bill in question having been authenticated as enacted by the legislature, by the signatures of the two speakers, affixed in open session, and by the approval of the Governor, every reasonable presumption must be made in favor of the regularity of its passage, and this presumption can be defeated only by an affirmative recitation of the Legislative Journal to the contrary. *Kefaurer* v. *Spurling,* 154 Tenn., 613; *House* v. *Creveling,* 147 Tenn., 589; *State ex rel.* v. *Davis,* 146 Tenn., 287; *Wilson* v. *State,* 143 Tenn., 55; *Nelson* v. *Haywood,* 91 Tenn., 609; *State ex rel.* v. *Algood,* 87 Tenn., 166; *Brewer* v. *Mayor & Aldermen of Huntingdon,* 86 Tenn., 732. Many other cases sustaining this rule are reviewed in the cases above cited.

*(2)* In *Brewer* v. *Mayor & Aldermen of Huntingdon, supra,* the presumption from the signatures of the speak-

ers and the Governor was held to have been overcome by an affirmative recitation of the Journal of the House of Representatives that the bill was rejected.

However, in *State ex rel.* v. *Davis, supra,* it was held by this court that the presumption arising from the signatures of the speakers and the approval of the Governor was not overcome by the fact that the House Journal recited that the bill failed for the want of a constitutional majority when put upon its final passage. The court said:

"The mere fact that the journal entries show that the bill appearing as chapter 840 of the published Private Acts of 1921 was put upon its final passage in the House and failed for the want of a constitutional majority on a certain date is not affirmative evidence that it was not thereafter called up and regularly passed in the House. It is a matter of common legislative history and political experience that bills often fail in either house of the legislature when put upon their final passage for the want of a constitutional majority, and are afterwards called up and regularly passed. It is also a well-known rule of the legislature that the failure of a bill to receive a constitutional majority is not a defeat of the bill, and is not an affirmative showing of the defeat of such bill. It is merely a showing that it did not pass at that time for the want of a constitutional majority, and may be called up and subsequently passed."

*(3)* There is no difference between the legislative *status* of a bill which fails for want of a constitutional majority, when put upon its final passage, and one which is tabled. In either case the bill remains in the control of the legislative body. To table a bill is merely to lay it aside, with no more effect than its removal from the ac-

tive calendar. It may be subsequently recalled from the table and put upon its final passage.

*(4)* We find no judicial definition of the phrase "to table a bill," but to "table" is defined in the New Standard Dictionary: "To lay on the table, as in a deliberative body, postpone for discussion at a future time, or for an indefinite period.".

The rules of the Senate, Senate Journal for 1921, pages 98-108, show affirmatively that the tabling of a bill is not equivalent to its rejection. Rule 50 provides: "A motion 'to postpone indefinitely' or 'to strike out the enacting clause of a bill' or 'resolving clause of a resolution,' if concurred in, is equivalent to a rejection." That a motion to table was not deemed by the Senate as equivalent to a motion "to postpone indefinitely" is shown by rule 19, which provides that a motion to table takes precedence in the order of business over a motion "to postpone indefinitely."

So, it appears to us that the recitation of the Senate Journal that the bill was tabled on April 5, 1921, does not negative or contradict the presumption, arising from the signatures of the speakers and the approval of the Governor, that the bill was subsequently put upon its final passage and passed, in accordance with the constitutional requirements.

Nor do we think the presumption of the regularity of the passage of the bill can be defeated by the fact that the clerk of the Senate, when he returned the bill to the House of Representatives, announced that the bill had been tabled in the Senate. The recitation of the House Journal is only evidence that the clerk of the Senate returned the bill and made the statement that the Senate had tabled it; it is not evidence of the truth or accuracy

of the statement made by the clerk. As to this the records of the Senate control; and the signature of the speaker of the Senate, affixed in open session and noted on the Journal, constitutes a record made by the Senate itself that the bill had been passed on a third and final reading.

The presumption that the bill was passed in the Senate on April 5th, subsequently to the sustaining of the motion to table, seems to us supported by the fact that the bill was transmitted to the House on the same day. If the tabling of the bill had been the final action of the Senate on that day, there would have been no occasion for the clerk to return it to the House of Representatives. It would have remained in the Senate for future action. It seems likely, therefore, that the message of the clerk to the House of Representatives that the bill had been tabled in the Senate, was an inadvertence. At any rate, it is not sufficient to overcome the presumption arising from the subsequent history of the bill.

(5) We conclude, therefore, that the Private Acts of 1921, chapter 697, must be treated as a valid and constitutional enactment, and is a conclusive defense to the consolidated suits.

The decree of the Chancellor to the contrary is reversed, and the several suits dismissed at complainaint's cost.