WRIGHT *et al. v.* WILES *et al.*

(*Nashville,* December Term, 1937.)

Opinion filed June 11, 1938.

JACOBS H. DOYLE and ELKIN GARFINKLE, both of Nashville, for appellants.

ALBERT G. EWING and ALBERT G. EWING, III, both of Nashville, and GREEN, WEBB, BASS & McCAMPBELL, of Knoxville, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Complainants, who are engaged in the photographic and photo-finishing business, brought this bill attacking

the constitutionality of Chapter 253 of the Public Acts of Tennessee of 1937, which creates a Board of Photographic Examiners, with the power to examine and license photographers, and thus limit and regulate the conduct of this business.

The Act is assailed on various grounds alleged to be in conflict with different sections of the Constitution, it being insisted that it is arbitrary and unreasonable class legislation, discriminatory in its effect and placing unreasonable and unnecessary restrictions upon the conduct of this private business and the right to contract; and it. is also insisted that the Act embraces more than one subject and that one of the subjects is not set out in the title.

A preliminary question is presented by the allegation that the bill was not passed on three different days in each House of the Legislature, and specifically that it did not receive, on its final passage in the House of Representatives, the assent of the majority of all of the members of that House.

We consider, first, this objection to the validity of the Act which, if found to be well taken, is determinative. Looking to the Journal, as it is conceded may be done, it appears affirmatively that the bill was passed on two readings, and that when it was called up for passage on the third reading the vote was forty-four noes and twenty ayes and twelve recorded as present and not voting. Following the announcement of this result, the Journal shows that a motion to reconsider was made and tabled.

This was on the 18th day of May, 1937, being the seventy-second day of the session.

The next pertinent entry on the Journal shows the report of the Committee on Enrolled Bills, Wednesday,

May 19, 1937, being the seventy-third day of the session, and this report shows that House Bill, No. 1197, being the bill in question, had been engrossed and was ready for transmission to the Senate.

The next entry is on Friday, May 21, 1937, the seventy-fifth day of the session, and it appears that this bill was returned to the House from the Senate and was reported as having been passed by the Senate. The next entry on the same day shows that the Committee on Enrolled Bills reported, "we have carefully compared House Bill No. 1197 and find same correctly enrolled and ready for the signatures of the Speakers. Dixon, Chairman." There follows on the Journal the word "signed", and immediately following, "The Speaker announced that he had signed House Bill No. 1197." Next, a "Message from the Senate", reading, "Mr. Speaker: I am directed to return to the House, House Bill No. 1197 signed by the Speaker. Hunt, Clerk." There then follows a record of the report of the Committee on Enrolled Bills to the effect that the Bill had been transmitted to the Governor, and following that, under the caption "Message from the Governor", these words: "Mr. Speaker: I am directed by the Governor to return herewith House Bill No. 1197 with his approval. F. L. Browning, Secretary."

██ Under the holdings of this Court, every presumption is applied in favor of the regularity of the passage of a bill when the record shows it to have been signed by the Speakers of both Houses and thereafter approved by the Governor. This rule is given controlling application unless it affirmatively appears that the bill was defeated by final action in one or the other of the two Houses. *State ex rel.* v. *Davis,* 146 Tenn., 287, 240 S. W., 762; *State ex rel.* v. *Hannum,* 158 Tenn., 119, 11 S. W.

(2d), 858; *State ex rel.* v. *Algood,* 87 Tenn., 163, 166, 10 S. W., 310; *Brewer* v. *Mayor, etc., of Huntingdon,* 86 Tenn., 732, 9 S. W., 166. The situation presented by this record differs in details from that considered in any of the reported decisions of this Court. As has been shown, it affirmatively appears that when this bill was called up for passage on the third reading in the House, it was defeated by a vote of forty-four to twenty; that thereupon a motion to reconsider this action was made and thereupon a motion to table the motion to reconsider was made and carried.

The argument for the validity of the bill is that this action shown by the Journal does not conclusively rebut the presumption that subsequently the motion to reconsider was taken from the table and thereupon the motion to re-consider was adopted and following that the bill was again put upon its passage and adopted by a constitutional majority.

In the case of *State ex rel.* v. *Davis, supra,* the Journal showed that the bill received a majority vote for its passage, but failed for want of a constitutional majority, not, as here, that it was defeated by a majority vote of more than two for one, followed by a motion to re-consider immediately tabled. Says the opinion in the *Davis Case* (page 291), ''It is also a well-known rule of the Legislature that the failure of a bill to receive a constitutional majority is not a defeat of the bill, and is not an affirmative showing of the defeat of such bill.''

In the *Algood Case, supra,* the Journal showed that, following a tie vote; a motion was made to re-consider, and the Court said this was not an affirmative showing that the measure was not thereafter re-considered and duly passed.

In *State ex rel.* v. *Hannum, supra,* the Senate Journal entry was only that the bill was tabled, and the Court said this was not a sufficient affirmative showing of its defeat to overcome the presumption in favor of its subsequent passage, arising from the signing by the Speakers and Governor. Here, again, there was no affirmative showing of the defeat of the bill by a majority vote against it, as in the case now before us.

In *Brewer* v. *Mayor and Aldermen of Huntingdon, supra,* the Journal showed that a committee report of the bill for rejection was adopted and nothing more appearing (except the signing by the Speakers and Governor), this was held to be an affirmative showing that the bill did not become a law.

 The case at bar is distinguished from the Brewer Case, in argument for its validity, by the fact that in the Brewer Case the bill was rejected by an affirmative vote, here defeated by a majority vote. We are not prepared to say that this is a distinction that has substance. Both actions constituted an affirmative record of defeat of the measure. But this further difference appears. There was no motion to re-consider in the Brewer Case, while here there was a motion to re-consider, which was immediately tabled and thus the matter rested. It is, therefore, urged that final disposition was thus left open to the presumption, arising from the subsequent signing, that the bill was later taken from the table, the vote defeating it re-considered and the bill passed by a constitutional majority vote. We are not of opinion that the rule of presumption relied on should be so extended.

██ ██ The Senate rules of order deal specifically with this situation, it being provided in such cases that "it shall be a finality when a motion to re-consider is tabled."

We do not find this situation specifically dealt with in the House rules. But an examination of the House Journal shows that the almost invariable practice is to follow a vote on the passage of a bill, either affirmative or negative, with the entry, "A motion to reconsider was tabled." We think the obvious implication from this practice is that this procedure was used and treated as a final disposition of the bill or resolution. However, we note one instance in the Journal of the House for 1937 in which a bill thus disposed of was thereafter, without objection, taken from the table by motion and re-considered for the purpose of amendment, and thereafter the bill was again passed. But, not only was this exceptional, but in that instance the bill had originally been passed by a unanimous vote in its favor. It did not, as here, appear that it had been defeated on its third reading by a large majority. And, while Roberts Rules of Order, which the House rules provide may be looked to on questions not provided for by the House rules, states the general rule to be that a motion to table leaves the measure subject to subsequent further consideration, a footnote states that, "In Congress it is usual for the member in charge of an important bill as soon as it is passed to move its reconsideration, and at the same time to move that the reconsideration be laid on the table. If the latter motion is adopted the reconsideration is dead and the bill is in the same condition as if the reconsideration had been voted on and lost." This effect is given to this exceptional form of action,—a motion to reconsider coupled with a motion to table the motion to reconsider,—despite the general rule that an adopted motion to table leaves the measure open to be thereafter taken up.

■ In view of what has been said, we are not of opinion that the case here presented calls for the application of the rule of presumption based on the signing of a bill by the Speakers and Governor. The record as a whole too clearly shows affirmatively that this bill was not passed on three readings in the House. The affirmative showing of its defeat when last acted on by a majority of more than two for one is not overcome by the showing of a motion to table a motion to re-consider, in view of the use commonly made of this procedure as a final disposition of a measure. The assignment challenging the validity of the act on this ground must be sustained, and the decree of the Chancellor reversed.

In view of the conclusion thus reached, it becomes unnecessary to pass upon grounds plausibly advanced challenging the constitutionality of this Act on the merits. However, it is not inappropriate to say that we have examined the Act and the full briefs of counsel and would find difficulty in sustaining the measure as a justifiable exercise of the police power, in view of the nature of the occupation affected. A headnote to the recent case of *E. McD. Campbell* v. *Thos. M. McIntyre et al.,* 165 Tenn., 47, 52 S. W. (2d), 162, reads:

"Notwithstanding that the policy of legislation is outside the scope of judicial review, in order to protect the individual right of a citizen to engage in a private business or vocation without unreasonable restraint, which right is recognized by the 14th Amendment to the Constitution of the United States and by Article 1, section 8 and Article 11, section 8 of the Constitution of Tennessee, the courts are required to determine whether a statute enacted in the exercise of the police power has any real tendency to protect the public safety, the public health

or the public morals, and whether the interests of the public generally, as distinguished from those of a particular class, require such interference.''

We find it difficult to perceive just how the licensing of photographers and regulation of the taking and finishing of pictures, with the exceptions therein set forth, provided for by this Act, ''has any real tendency to protect the public safety, the public health or the public morals''; or how and why ''the interests of the public generally, as distinguished from those of a particular class, require such interference'' as this Act provides.