Fuqua *v.* Davidson County *et al.*

(*Nashville*, December Term, 1949.)

Opinion filed February 10, 1950.

646

CARMACK COCHRAN, of Nashville, for complainant.

HORACE OSMENT, of Nashville, for Davidson County.

HUGH B. HELM, of Nashville, petitioner, in person.

BEN WEST, of Nashville, for petitioner H. Sanders Anglea.

Mr. Chief Justice Neil delivered the opinion of the Court.

This suit originated in the chancery court by bill of the complainant, L. B. Fuqua, seeking a declaratory judgment as to the constitutionality of Chapter 738, Private Acts of 1927, as amended by Chapter 336, Private Acts of 1949, regulating the holding of primary elections in Davidson County. The Acts were assailed as being constitutionally invalid upon numerous grounds, but particularly because House Bill No. 788, which was the designation of Chapter 738 of the Private Acts of 1927, was not enacted as required by Article 2, Section 18 and 21 of the Constitution of Tennessee, in that the caption was amended in the Senate, and the bill was not passed thereafter on three separate readings, and that the said bill never received a majority in each of the houses on three separate readings.

The defendant Davidson County and Litton Hickman, County Judge and Financial Agent of said County, demurred to the bill on the ground that Chapter 738 of the Private Acts of 1927 "in its original form was enacted in keeping with and as provided by Section 18 of Article 2 of the Constitution". The Attorney General of the State, Hon. Roy H. Beeler, who was made a party defendant, filed a formal answer in which he averred that the State had no interest to defend.

While the original bill alleged grounds of unconstitutionality other than the one specifically referred to herein, and the demurrer challenged all other such grounds of alleged invalidity, we are constrained to affirm the decree of the Chancellor who overruled the demurrer and held aforesaid Act to be unconstitutional. It is for this reason that all other issues raised by the pleadings are pretermitted.

Pending the hearing of the cause several persons filed petitions asking that they be made parties upon the ground that the ruling of the court would affect them personally as well as officially. The Chancellor allowed these petitions to be filed, but held that they were "proper parties" defendant, but were not "necessary parties". Each excepted to the ruling of the Chancellor and prayed an appeal, which was granted. The errors assigned however are not determinative of the legal question involved and are therefore pretermitted. Conceding that they are "necessary parties" this fact could have no bearing upon the constitutionality of the Private Act assailed in this proceeding. But the briefs filed by counsel for these intervenors, in support of the validity of the Act, have been given full consideration by the Court.

Chapter 738 of the Private Acts of 1927 applied to Davidson County (determined upon a population basis according to the Federal Census of 1920 or any subsequent Federal Census) and provided for holding "legalized primary elections", and that the expenses for holding such elections "shall be defrayed in such manner as may be provided by the Committee or governing authority of the political party holding such primaries." Chapter 336 of the Private Acts of 1949 sought to strike out the above quoted provision and substitute in lieu

thereof the following: ''Be it further enacted, That all expenses for and incident to holding such Primary Elections shall be borne by the county or counties in which said Primary Elections are held.''

By an amendment to the original bill the complainant filed a photostatic copy of the Journals of both the Senate and House of Representatives which discloses a complete history of the Act herein assailed. The Private Act in question originated in the House of Representatives as ''House Bill No. 788''. In the published Acts of 1927 this Act, the same being Chapter 738, is signed by the respective Speakers of the two houses of the Legislature and was approved by the Governor.

In reciting the irregularities complained of in the original bill which render the Act in question unconstitutional the Chancellor found as follows:

''It appears therefrom that at the afternoon session on Wednesday, April 27, 1927, the Senate amended House Bill No. 788 as follows:

'' 'Amending by adding at the end of Section 1 the following and providing that this Act shall not affect or regulate Primary Elections provided for by Chapter 118, Acts of 1917.'

''Whereupon as amended it passed its third and final reading, and on the same day at the night session the Speaker of the Senate announced that he had signed the bill. On Wednesday, April 27, 1927, at the morning session the House passed the bill on final reading after tabling the aforesaid amendment. Therefore the House Journal does not show that it was passed in the House as amended in the Senate. The records show that the proceedings with reference to the passage of the bill are irregular. Another irregularity is noted also, the Jour-

nal does not show that after final passage of the bill that it was signed by the Speaker of the House in open session, and that fact noted in the Journal as provided in the aforesaid Article 2, Section 18.''

The contention made by counsel for Davidson County, both in the assignments of error and on the brief, is as follows:

''The Court erred in finding and holding that Chapter 738 of the Private Acts of 1927 was not passed in accordance with the Constitution, Article 2, Section 18, and that it was therefore invalid.

. . . . . .

''Under the holdings of this Court every presumption is applied in favor of the regularity of the passage of a bill when the record shows it to have been signed by the Speakers of both Houses and thereafter approved by the Governor. The rule is given controlling application unless it affirmatively appears that the bill was defeated by final action in one or the other of the Houses. *Wright et al.* v. *Wiles et al.*, 173 Tenn. [334], 337 [117 S. W. 2d 736, 119 A.L.R. 456], [*Home*] *Telegraph Co.* v. *Nashville*, 118 Tenn. [1], 9 [101 S. W. 770, 11 Ann. Cas. 824].''

The constitutional requirements as to procedure in the enactment of a bill appear in Article 2, Section 18, which reads as follows:

''Bills; readings; passage; signing; approval.

''Section 18. Every bill shall be read once on three different days, and be passed each time in the House where it originated before transmission to the other. No bill shall become a law until it shall have been read and passed, on three different days in each House, and shall have received on its final passage, in each House, the assent of a majority of all the members to which that House

shall be entitled under this Constitution; and shall have been signed by the respective Speakers in open session— the fact of such signing to be noted on the Journal; and shall have received the approval of the Governor, or shall have been otherwise passed under the provisions of this Constitution.''

We readily concede, as did the Chancellor, ''that where an Act of the Legislature has been signed by the resp ıctive Speakers of both Houses in open session, and thaı fact noted on the Journals and has been approved by the Governor as required by the Constitution, every reasonable presumption is in favor of the regularity of its passage, and the Act will be sustained *unless the Journal affirmatively shows* the absence of some constitutional requirement''. (Italic ours.) *Wilson* v. *State,* 143 Tenn. 55, 68, 224 S. W. 168; *State ex rel. Whitson* v. *Algood,* 87 Tenn. 163, 10 S. W. 310; *Nelson* v. *Haywood County,* 91 Tenn. 596, 602, 20 S. W. 1; *Wright et al.* v. *Wiles et al.,* 173 Tenn. 334, 117 S. W. 2d 736, 119 A.L.R. 456.

The right of the court to look to the Journals in considering the progress of legislation cannot be doubted. *Wright* v. *Wiles, supra; State ex rel. Pitts* v. *Nashville Baseball Club,* 127 Tenn. 292, 296, 154 S. W. 1151, Ann. Cas. 1914B, 1243. We are asked in the instant case to indulge the presumption of regularity in the passage of this Private Act because ''the record shows it to have been signed by the Speaker of the two Houses and thereafter approved by the Governor''. Under the authorities we have indulged this presumption in all cases ''unless the journals furnish affirmative proof to the contrary.'' *Wilson* v. *State, supra* [143 Tenn. 55, 224 S. W. 172]. In *Home Telegraph Company* v. *Nashville,* 118 Tenn. 1, 101 S. W. 770, 11 Ann. Cas. 824, and *Mobile & O. R. Co.* v.

*Postal Telegraph Cable Company,* 101 Tenn. 62, 66, 46 S. W. 571, 41 L.R.A. 403, it was held that the signing of legislative bills by the respective Speakers in open session to be noted on the journals is merely directory, and not mandatory.

The Journals of the two Houses show that at the afternoon session of April 27, 1927, the Senate amended House Bill 788 by providing "that the Act shall not effect or relate to Primary Elections provided for by Chapter 118, Acts of 1917". As amended the bill passed third and final reading in the Senate.

The House Journal fails to show that this Bill as amended was ever passed by the House of Representatives. Nor is there any showing upon the House Journal that the Bill as amended was ever signed by the Speaker of the House in open session. It conclusively appears that the Bill, without the aforesaid amendment, had been transmitted to the Governor for his approval. The Journal recites that the Governor returned the bill to the House at the latter's request. It was later on amended in the Senate, and, as we have noted, was never returned to the House for its further consideration on its amended form. This amendment was by someone deemed to be very important. But there is no showing that the House had it recalled for the purpose of adopting such an amendment because it had defeated an amendment of the same import when the Bill was being first considered.

In *Home Telegraph Company* v. *Nashville, supra,* this Court in upholding the validity of an Act of the Legislature under the presumption of regularity where it had been signed by the Speakers of each House and approved by the Governor, quoted with approval the following statement from *State ex rel. Pangborn* v. *Young,* 32 N.J.L.

29: ''Can any one deny that, if the laws of the state are to be tested by a comparison with these journals, so imperfect, so unauthenticated, that the stability of all unwritten law will be shaken to its very foundation. It is scarcely too much to say that the legal existence of almost every legislative act would be at the mercy of all persons having access to these journals; for it is obvious that any law can be invalidated by the interpolation of a few lines, or the obliteration of one name and the substitution of another in its stead. I cannot consent to expose the state Legislature to the hazard of such probable error or facile fraud.'' [118 Tenn. 1, 101 S. W. 772.]

To all of which we agree as being in conformity with settled rules of statutory construction. But in the instant case there has been no falsifying the Journals. No one claims any ''probable error or facile fraud''. We are concerned with what the Journal of the House *fails to show,* that is that the Bill was never up for consideration in the House for any purpose following the amendment by the Senate.

In *Mobile & O. R. Co.* v. *Postal Telegraph Cable Co.,* the Journals showed that every requirement of Article 2, Section 18 of the Constitution was complied with except a failure to show that the bill was signed by the Speaker of the House. The Act was held valid. But MR. JUSTICE WILKES who wrote the opinion observed [101 Tenn. 62, 46 S. W. 572], ''This presents a question of grave difficulty and doubt.'' In *Home Telegraph Co.* v. *Nashville, supra,* the same Act was before the Court for consideration, and again MR. JUSTICE WILKES, after citing and quoting from numerous cases, sustained the Act upon the presumption that it was regularly enacted. The question before the Court in the above cases presented no such

difficulty as in the instant case. Shall we indulge the presumption that this Bill, as amended in the Senate, was passed by the House when the Journal affirmatively shows the contrary?

In *Wright et al.* v. *Wiles et al., supra,* the statute alleged to be invalid upon the ground that it was not constitutionally enacted, the Journal showed affirmatively that the bill was defeated by a vote of 44 to 20. It was signed by the Speakers of both Houses and approved by the Governor. The argument for the validity of the Act was that the Journal [173 Tenn. 337, 117 S. W. 2d 737] "does not conclusively rebut the presumption that subsequently the motion to reconsider was taken from the table and thereupon . . . to reconsider was adopted" and the bill adopted by a "constitutional majority". In response to this insistence this Court said: "We are not of opinion that the rule of presumpton relied on should be so extended."

We are asked in the instant case to extend the rule of presumption to a far greater extent than in the above case. There must be a limit to the presumption rule. It cannot be applied where the Journal affirmatively shows that the bill was defeated. Thus in *Brewer* v. *Mayor,* 86 Tenn. 732, 737, 9 S. W. 166, 168, it was said: "We hold now that irregularities will be cured, and omissions supplied by presumptions, but, where it appears that a bill was rejected, the journal entry so showing cannot be disregarded, and the act is void." This holding was expressly reaffirmed in *Home Telegraph Co.* v. *Nashville, supra.*

While we have saved many statutes under the rule of presumption of regularity in their enactment we think it would be a dangerous precedent to apply the rule where the statute involved was amended by the Senate and never

thereafter transferred to the House for its consideration and concurrence in the amendment; and more especially where an amendment of the same import and substance had been defeated in the House where the Bill originated.

The defendants insist, and especially the intervenors, that the complainant is without authority to maintain this action. In *Patton* v. *Chattanooga,* 108 Tenn. 197, 65 S. W. 414, 421, relied on by Davidson County and the intervenors, the question of the complainants' right to maintain the suit was decided in the following language: ''What we decide is that it is essential to the jurisdiction of the court in such a case that there shall be an allegation that the effect of the ordinance claimed to be illegal will be to require of complainant the payment of a tax, to increase his tax burdens, or otherwise inflict an injury not common to the body of the citizens.'' The complainants were seeking a decree declaring an ordinance of the city invalid which granted a franchise to a telephone company, the bill being filed by them as tax payers of the City of Chattanooga. In ruling that the complainants had no such interest as entitled them to sue, the Court said: ''The ordinance does not deal with the question of taxation, and hence cannot affect their tax burdens.'' Now it cannot be denied, in fact the demurrer admits it, that the expense of holding primary elections in Davidson County is tremendous, and of necessity will increase the tax burden of the complainant and other tax payers of the county. We are therefore of opinion that the Chancellor's ruling that the complainant was properly before the Court should be sustained.

Complaint is further made by intervenors, and especially Hugh B. Helm, that the Act in question should be sustained because of long delay in challenging its validity. The Act assailed has been in effect since 1927,

a period of 22 years. It is for this reason that defendant invokes the doctrine of laches. In Gibson's Suits in Chancery, Section 68, at page 85, relied on by the intervenor, it is said: "Acquiesce and its effect. . . . A party who has a right of action may lose that right (1) by confirmation of a voidable transaction, or (2) by acquiescing in the transaction, (3) or by mere delay, or laches in bringing suit." But neither the text nor any of the cases cited in support of it seems to be applicable to the instant case.

In the first place there has been no delay of 22 years in challenging the validity of the Act *as amended*. No one has acquiesced in the amendment, which imposes a tax burden upon citizens of the county. Nor has any tax payer, and especially the complainant, benefited in any way by the amendatory act. But if we should concede a long delay in attacking the validity of the Act in question there is no showing that any defendant, or any other citizen of the county, has been prejudiced thereby.

The instant case differs altogether from *Waldauer* v. *Britton*, 172 Tenn. 649, 113 S. W. 2d 1178, wherein it was held: "Members of the State Board of Elections are estopped from questioning the validity of the law under which they were elected and have acted, and the benefits of which they have accepted. Code 1932, Sections 1955-1958, 1963, 1964." We think the foregoing contentions are unsound and they are accordingly overruled.

Upon the foregoing authorities and for the reasons stated we are constrained to affirm the decree of the Chancellor.

PREWITT, BURNETT and TOMLINSON, JJ., concur.

ALBERT WILLIAMS, Special Judge, not participating.