Victor H. ASHE, Plaintiff-Appellant,

v.

William M. LEECH, Jr., Attorney General and Reporter For the State of Tennessee, et al., Defendants-Appellees.

Supreme Court of Tennessee,
at Nashville.

June 20, 1983.

Henry Haile, Morton, Lewis, King & Krieg, Nashville, for plaintiff-appellant.

William B. Hubbard, Chief Deputy Atty. Gen., Nashville, Michael W. Catalano, Asst. Atty. Gen., Knoxville, for defendants-appellees.

## OPINION

DROWOTA, Justice.

This is an appeal from the judgment of the chancery court holding constitutional Public Chapter 494 of the 1981 Acts of the Tennessee General Assembly.[1] Chapter 494 amended T.C.A. § 3–1–106[2], which provides for expenses and mileage allowances for members of the general assembly.

In the spring of 1981, the 92nd General Assembly passed Public Chapter 494. This

---

1. The act is reproduced in its entirety in the appendix to this opinion.

2. Before the amendment, § 3–1–106(a) provided:

Each member of the general assembly shall be paid for his expenses in attending legislative sessions and legislative committee meetings, and such conferences, symposiums, workshops, and other official meetings concerning state business and the duties of a legislator, held within or without the state of Tennessee, as are attended by members of the general assembly with the approval or at the direction of the speaker of either house or both houses. Expenses and mileage allowances shall be paid for attending sessions and such other meetings as provided in this section.

Section 3–1–106(e) provided:

Each member of the general assembly shall be paid a monthly expense allowance of one hundred dollars ($100), to provide for telephone, secretarial and other assistance in connection with his official duties when away from the seat of government.

act allows the members of the assembly an expense allowance [3] for "one (1) day preceding and one (1) day following [out of state conferences] if such days are required for travel purposes." The act also increases the office expense allowance from $166.15 [4] per month to $250 per month. As originally passed by the assembly, House Bill 146 provided that both the office expense allowance amendment and the out-of-state conference allowance adjustment would take effect upon becoming law. After the bill's passage by both houses, however, and after the bill had been delivered to the governor for his consideration, the attorney general, on April 7, 1981, issued an opinion stating Senate Bill 585 (the verbatim counterpart to House Bill 146) violated Article II, § 23, of the Tennessee Constitution [5], because it purported to increase office expenses during the term of the general assembly which enacted it. Because of this opinion, the bill's sponsor, Hon. Shelby Rhinehart, without any vote by the members of the House of Representatives, directed the clerk of the House to recall House Bill 146 from the governor's office. The clerk did so, and the governor complied with the request. The bill was amended to provide that the increase in office expenses would take effect only after the November 1982 election, as provided by Article II, § 23. Since the attorney general had said nothing about the out-of-state conference allowance, the provision regarding those expenses took effect upon the bill's becoming law.

Victor H. Ashe, a Tennessee State Senator, filed suit on August 3, 1981, challenging the constitutionality of Public Chapter 494. The complaint sought injunctive and declaratory relief against enforcement of the act. The complaint alleged the act was unconstitutional because it was irregularly enacted and because it violated Article II, § 23, of

the constitution. Regarding the irregular enactment, the Plaintiff contends it was constitutionally improper to recall the bill from the governor's office without prior approval of the House or the assembly. The Plaintiff also contends that, since the legislators, under the act, receive two days of expense payments which they have not received in the past, the act provides for an unconstitutional increase in expenses. The case was originally heard on cross-motions for summary judgment, supported by the Defendants' answers to Plaintiff's requests for admissions, a lengthy stipulation of facts and a single affidavit. After argument, the chancellor granted the Defendants' motion for summary judgment on the ground the Plaintiff lacked standing to sue. This Court reversed that ruling on appeal and ordered a remand to the chancery court for further proceedings.

On remand, the State filed an answer to the complaint, and the case was tried on stipulations. The chancellor ruled for the Defendants on the merits, holding the statute was not invalid even though it was recalled from the governor upon request of a member of the House without any vote of that body. The chancellor noted the constitution is silent about the proper method for recalling a bill from the governor's office, and he concluded the recall procedure used did not rise to constitutional dimensions. The chancellor further held the apparent "increase" in expenses authorized by § 1 of the act was not, in fact, an increase because the legislators were already entitled to reimbursement for their out-of-state conference expenses before the enactment, and the amendment merely "clarifies an ambiguity in how the legislators' expenses were to be paid by specifying that they would receive a per diem travel allowance." This direct appeal followed. As the sole deter-

---

**3.** This expense allowance was $66.47 a day during the 92nd General Assembly.

**4.** Although § 3–1–106 provided for an expense allowance of $100, $166.15 reflects T.C.A. § 8–23–101(d) adjustments for change in the per capita personal income of the state of Tennessee.

**5.** The relevant part of Article II, § 23, provides: "The compensation and expenses of the members of the General Assembly may from time to time be reduced or increased by laws enacted by the General Assembly; however, no increase or decrease in the amount thereof shall take effect until the next general election for Representatives to the General Assembly."

minative question is the constitutionality of Chapter 494, T.C.A. §§ 16–3–201 and 16–4–108 provide for this Court's jurisdiction.

We address, first, the Plaintiff's contention that the bill's recall from the governor's office without express direction by the assembly violated the constitution. The Plaintiff points to Article II, § 18 [6] and § 19 [7] as the provisions infringed upon. We would agree these sections protect, among other things, the deliberate consideration of legislative matters, as the Plaintiff suggests. These sections also provide the criteria by which this Court makes its determination of an enactment's validity. But the Plaintiff would have us infer from these sections a prohibition against the method of recall used by the House. This we cannot do. For, in reviewing the actions of a coordinate branch of our government, we, too, are bound by the constitution, both in the nature and extent of our inquiries and in our obligation to show the specific provision which is violated. And while it is the province of this Court to interpret the constitution of this state, we have neither the authority nor the power to alter that document or to impose such a meaning upon its words as is clearly outside the bounds of reasonable construction. Sections 18 and 19 do not, in the remotest way, proscribe this manner of recall.

Our review of the validity of an act is accompanied by every reasonable presumption favoring the regularity of the passage of the act, and the act will be upheld unless the journals affirmatively show the absence of some constitutional requirement. *Fuqua v. Davidson County,* 189 Tenn. 645, 227 S.W.2d 12 (1949). It is clear from *Fuqua* and other opinions of this Court on this same issue, *see, e.g., State v. Dixie Finance Co.,* 152 Tenn. 306, 278 S.W.

59 (1925); *State ex rel. v. Algood,* 87 Tenn. 163, 10 S.W. 310 (1889); *Nelson v. Haywood County,* 91 Tenn. 596, 602, 20 S.W. 1 (1892), that the courts of this state will look no further than the House and Senate journals in reviewing the enactment. And in looking to these journals, we are concerned with express constitutional requirements. Those journals do show House Bill 146 was recalled from the governor's office. But this matter is placed in the journal at the discretion of the assembly, as no provision in the constitution directs that it be entered and no provision of the constitution requires the recall of a bill be executed in any specific manner. The constitution leaves much to the discretion of the legislature. To the extent the constitution says nothing about the way certain matters are to be handled in the legislature, or in any of the branches of our government, such matters are within the discretion of that governmental body. Past decisions limiting our review to express constitutional requirements and limiting the scope of our review to the journals are, no doubt, founded upon the sound observation that this Court does not sit to oversee every step of the legislature in passing laws.

We find no constitutional requirements absent in the relevant entries of the House and Senate journals. The journals show House Bill 146 was introduced in the House on January 15, 1981, and passed first consideration on that day. On January 26, 1981, the bill passed second consideration. And on February 18, 1981, the bill passed the third and final consideration by vote of 53 years, 36 nays and 4 present and not voting. Senate Bill 585 was introduced on February 4, 1981, and passed first consideration on the same day. On February 5, 1981, the bill passed second consideration. On March 25, 1981, House Bill 146 was

---

**6.** "PASSAGE OF BILLS.—A bill shall become law when it has been considered and passed on three different days in each House and on the third and final consideration, has received the assent of a majority of all the members to which each House is entitled under the Constitution, when the respective speakers have signed the Bill with the date of such signing appearing in the journal, and when the bill has

been approved by the Governor or otherwise passed under the provisions of this Constitution."

**7.** "REJECTION OF BILL.—After a bill has been rejected, no bill containing the same substance shall be passed into a law during the same session."

substituted for the senate bill and House Bill 146 passed the senate with 19 yeas, 11 nays. After the bill was recalled from the governor's office, the Senate amended House Bill 146 by a vote of 18 yeas, 11 nays and 1 present and not voting. Although the House of Representatives failed to adopt the Senate amendment on May 19, 1981, the journal affirmatively shows the House adopted the amendment on May 22, 1981, by a vote of 53 yeas, 39 nays. The speaker of the house signed the bill on May 26, 1981. The next day, the speaker of the senate signed the bill. It was thereafter delivered to the governor. After the governor retained the bill for longer than 10 days without disposition, the bill became law without his signature.

The Plaintiff suggests the House's May 19 failure to pass the amendment was a "rejection" under Article II, § 19. We cannot agree. That section, in our opinion, contemplates a final rejection of a bill, such that the bill is never approved by one or both houses. Here, though the amended bill was not passed initially by the House, it was eventually passed, as is clearly set out in the journal. In *State v. Algood,* 87 Tenn. 163, 10 S.W. 310 (1888), the court was asked to rule on the constitutionality of an act which was on much the same footing as the act presently before this Court. The Senate introduced a bill, passed it on three separate readings and sent it to the House. The bill passed first and second readings in the House. Before the third reading, an amendment to the bill was proposed and the House passed the bill as amended. The amended bill was returned to the Senate where it was rejected by a vote of 11–11. The Senate journals show that, on that same day and the day following, motions to reconsider the vote were made. The journal was silent about the final disposition of these motions, but the journal did show that on a day subsequent to these motions, the speaker of the senate signed the bill. The court held the statute valid, as the journal did not show affirmatively that the bill did not pass. The court stated, "The motion to

reconsider, being duly entered, postponed the final fate of the bill. We know, as a matter of history and common political experience, that it is not unusual for a bill to be defeated and the adverse vote subsequently reconsidered, and the bill finally passed." 87 Tenn. at 169, 10 S.W. 310. The court supplied the constitutionally required Senate vote with the presumption that the journal's failure to show the final passage was due to a clerical error. *Algood* is authority that Article II, § 19, is concerned not so much with interim dispositions of bills as with final rejections.

Second, the Plaintiff contends § 1 of Chapter 494 provides for an unconstitutional increase in the expenses of members of the assembly. A main purpose behind Article II, § 23, is to discourage government officials from improperly taking advantage of their positions to grant favors or benefits. In construing this section of the constitution, we must attend to its underlying purpose. Likewise, in determining whether the Plaintiff's constitutional challenge has merit, we are required to look to the substance and effect of the act, as well as to its letter. For, as stated in *Peay v. Nolan,* "It is not the form of a statute or the words that are used, but the object intended and the result reasonably effected by their use that must control this determination [of the statute's constitutionality]." 157 Tenn. 222, 235, 7 S.W.2d 815, 818. We agree with the chancellor that the act merely clarified the provision that "[e]xpenses and mileage allowances shall be paid for attending sessions . . . as provided in this section."[8] The statute, before amendment, did not provide explicitly that a per diem expense allowance was to be given those traveling to and from out-of-state conferences, if a day before the conference and a day after the conference were required for travel. The director of legislative administration, apparently on his own judgment, declined to reimburse legislators for their travel expenses, putting special emphasis on the words "in attending." The

**8.** See footnote 2.

legislators were given the per diem expense allowance for each day of the conference only.

█ But regardless of any previous practice of the director in distributing expense allowances under § 3–1–106(a), a reasonable interpretation of the old statute permits legislators their expenses for travel to and from meetings concerning state business. But for their legislative duties, representatives and senators probably would not make the trek, and so allowing the expenses can hardly be categorized as a favor or a benefit. That the allowance is per diem, as opposed to a reimbursement for actual expenses incurred, is not objectionable, considering actual expenditures for transportation, food, and in some cases, lodging, might well exceed the allowance. We note the act grants the allowance only if the day before and the day after the conference are needed to travel. Those who can with reasonable comfort leave this state and arrive at the conference location on the same day are not entitled to the allowance. Since this allowance could reasonably be had under the old statute, we are persuaded the amendment does not provide for an unconstitutional increase in expenses.

We reject the Plaintiff's assertion that *Peay v. Nolan, supra,* compels a different result. In both *Peay* and the present case, the primary concern is the act's "natural effect." Whereas the natural effect of the act in *Peay* was to increase all legislators' compensation, the natural effect of Chapter 494 is to make clear that expenses for reasonably required travel days to and from out-of-state conferences are "expenses in attending ... official meetings ... without the state ..."

We hold the Plaintiff's constitutional challenges to Chapter 494 are without merit. We affirm the judgment of the chancellor. The costs of this appeal are taxed to the Plaintiff.

FONES, C.J., and COOPER, BROCK and HARBISON, JJ., concur.

APPENDIX

PUBLIC CHAPTER NO. 494

HOUSE BILL NO. 146

By Rhinehart

Substituted for: Senate Bill No. 585

By Crouch

AN ACT relative to expense and mileage allowances for members of the general assembly and to amend Tennessee Code Annotated, Section 3–1–106.

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Section 3–1–106 is amended by adding the following language at the end of subsection (a):

Provided, however, that for attendance of such conferences, symposiums, workshops and meetings which are held without the state of Tennessee, each member shall additionally receive the expense allowance provided in subsection (b) of this section for one (1) day preceding and one (1) day following such activities if such days are required for travel purposes.

SECTION 2. Tennessee Code Annotated, Section 3–1–106 is further amended by deleting from the fourth sentence of subsection (c) the words "but the reimbursement shall not exceed the amount which would have been allowed for travel in a personal vehicle".

SECTION 3. Tennessee Code Annotated, Section 3–1–106 is further amended by deleting the words and figures "one hundred dollars ($100)" in subsection (e) and by substituting instead the words and figures "two hundred fifty dollars ($250)".

SECTION 4. Section 1 of this Act shall take effect upon becoming a law, the public welfare requiring it. Sections 2 and 3 of this Act shall take effect on November 2, 1982, in compliance with Article 2, Section 23 of the Tennessee Constitution.

PASSED: May 22, 1981

APPENDIX—Continued
Ned R. McWherter,
SPEAKER OF THE HOUSE
OF REPRESENTATIVES
John S. Wilder,
SPEAKER OF THE SENATE

APPROVED:

GOVERNOR

Pursuant to Article III, Section 18, of the Constitution of the State of Tennessee, the Governor had House Bill No. 146 in his possession longer than ten (10) days, so therefore, the bill becomes law without the Governor's signature.